UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TODD C. BANK,<br><br>       *Plaintiff*,<br><br>   -against-<br><br>COOPER, PAROFF, COOPER & COOK;<br>IRA G. COOPER; PHILIP S. PAROFF;<br>ADAM P. COOPER; and SHARON E. COOK,<br><br>       *Defendants*. | 08 CV 3936 (JBW) (LB)<br><br>**NOTICE OF MOTION** |

   **PLEASE TAKE NOTICE** that upon the annexed Declaration of Plaintiff, Todd C. Bank,

and the accompanying Memorandum of Law, and upon all other pleadings and proceedings herein,

Plaintiff, Todd C. Bank, will move the Court, on July 2, 2009 at 10:00 a.m., for an Order: (1)

pursuant to Rules 60(b)(1) and 60(b)(6) of the Federal Rules of Civil Procedure, and Rule 6.3 of the

Local Civil Rules of the Eastern District of New York, granting reconsideration of the Order of the

Court dated May 27, 2009; and (2) granting Plaintiff any other relief deemed just and proper by the

Court.

   **PLEASE TAKE FURTHER NOTICE** that, in accordance with Local Civil Rule 6.1(b), any

opposing affidavits and answering memoranda shall be served within ten business days after service

of Plaintiff's moving papers.

Dated:  June 11, 2009

               Yours, etc.,

                **s/ Todd C. Bank**
               TODD C. BANK
               119-40 Union Turnpike
               Fourth Floor
               Kew Gardens, New York 11415
               (718) 520-7125
               TB-6825

               Attorney for Plaintiff

TO:    ADAM P. COOPER
        Defendant/Attorney for Defendants
        80-02 Kew Gardens Road, #300
        Kew Gardens, New York 11415
        (718) 793-1311

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

08 CV 3936 (JBW) (LB)

TODD C. BANK,

*Plaintiff*,

-against-

COOPER, PAROFF, COOPER & COOK;
IRA G. COOPER; PHILIP S. PAROFF;
ADAM P. COOPER; and SHARON E. COOK,

*Defendants*.

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR RECONSIDERATION
OF THE ORDER OF THIS COURT DATED MAY 27, 2009**

TODD C. BANK
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York 11415
(718) 520-7125
TB-6825

Attorney for Plaintiff

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.    DEFENDANTS WERE NOT ENTITLED TO SUMMARY JUDGMENT . . . . . . . . . 5

      A.    Summary Judgment Should Not Have Been Granted
           on Counts I, II, or III of the Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . 6

      B.    Summary Judgment Should Not Have Been
           Granted on Count IV of the Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . 10

      C.    Summary Judgment Should Not Have Been
           Granted on Count V of the Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . 13

II.   THIS ACTION IS NOT PRECLUDED BY
      THE *ROOKER-FELDMAN* DOCTRINE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

III.  THIS ACTION IS NOT PRECLUDED BY *RES JUDICATA* (CLAIM
      PRECLUSION) OR COLLATERAL ESTOPPEL (ISSUE PRECLUSION) . . . . . . . 24

      A.    This Action Is Not Precluded by *Res Judicata* (Claim Preclusion) . . . . . . . . . . 26

      B.    This Action Is Not Precluded by Collateral Estoppel (Issue Preclusion) . . . . . . 27

IV.   THE FEBRUARY 4, 2009 ORDER OF MAGISTRATE JUDGE
      BLOOM WAS ISSUED IN VIOLATION OF RULE 6(b)(1)(B)
      OF THE FEDERAL RULES OF CIVIL PROCEDURE . . . . . . . . . . . . . . . . . . . . . 28

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

# TABLE OF AUTHORITIES

**Page**

## STATUTES AND RULES

15 U.S.C. § 1692 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 1257 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23, 23, n.9

28 U.S.C. § 1738 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 20, n.7, 25, 26

Fed. R. Civ. P. 8(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

Fed. R. Civ. P. 6(b)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 28, 29, 30, 31, 31, n.10

Fed. R. Civ. P. 60(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 32

Fed. R. Civ. P. 60(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 32

Fed. R. Civ. P. 56(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fed. R. Civ. P. 72(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Local Civil Rule 6.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 32

N.Y. CPLR § 1007 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

N.Y. RPAPL § 711(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## CASES

*4220 Broadway Assocs. v. Perez,*
723 N.Y.S.2d 816 (N.Y. Sup. Ct. App. Term 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Allen v. McCurry,*
449 U.S. 90 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Amorizzo v. Conte,*
2008 N.Y. Misc. LEXIS 5969 (N.Y. Sup. Ct. Sept. 19, 2008) . . . . . . . . . . . . . . . . . . . . . . 27

**Page**

*Argus Inc. v. Eastman Kodak Co.*,
801 F.2d 38 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*BBIG Realty Corp. v Ginsberg*,
489 N.Y.S.2d 224 (N.Y. App. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Bolin v. United States*,
1999 U.S. Dist. LEXIS 19854 (N.D. Ga. July 16, 1999) . . . . . . . . . . . . . . . . . . . . . 16-17

*Bloom v. Niagara Falls Housing Authority*,
430 F. Supp. 1183 (W.D.N.Y. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Brusco v. Miller*,
639 N.Y.S.2d 246 (N.Y. Sup. Ct. App. Term 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Burka v. New York City Transit Auth.*,
32 F.3d 654 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*C.J. Oliver v. Home Indemnity Co.*,
470 F.2d 329 (5th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, n.1

*Day v. Allied Interstate, Inc.*,
2009 WL 1139474 (E.D.N.Y. Apr. 27, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*D.C. Court of Appeals v. Feldman*,
460 U.S. 462 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, n.6

*Eina Realty v. Calixte*,
679 N.Y.S.2d 796 (N.Y.C. Civ. Ct. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Emanuel v. American Credit Exchange*,
870 F.2d 805 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 17

*Epps v. Etan Industries, Inc.*,
1998 U.S. Dist. LEXIS 19120 (N.D. Ill. Nov. 30, 1998) . . . . . . . . . . . . . . . . . . . . . . . 13

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
544 U.S. 280 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21, 22, n.8, 23, 24

*Ferragamo v. Signet Bank/Maryland*,
1992 U.S. Dist. LEXIS 21602 (D. Md. Mar. 17, 1992) . . . . . . . . . . . . . . . . . . . . . . . . 17

**Page**

*Foti v. NCO Financial Systems, Inc.*,
424 F. Supp. 2d 643 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gibson v. Comm'r of Mental Health*,
2009 U.S. Dist. LEXIS 10217 (S.D.N.Y. Feb. 11, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Grudzinski v. Staren*,
87 Fed. Appx. 508 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Harris v. N.Y.S. Dep't of Health*,
202 F. Supp. 2d 143 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25-26

*Heintz v. Jenkins*,
514 U.S. 291 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, n.3

*Hellstrom v. United States Dep't of Veterans Affairs*,
201 F.3d 94 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hoblock v. Albany County Bd. of Elections*,
422 F.3d 77 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21, 22, 22, n.8, 23, 24, 26, 27, 28

*International Controls Corp. v. Vesco*,
556 F.2d 665 (2d Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, n.1

*Ionics, Inc. v. Elmwood Sensors*,
110 F.3d 184 (1st Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Jacobson v. Healthcare Fin. Servs.*,
434 F. Supp. 2d 133 (E.D.N.Y. 2006),
*rev'd in part on other grounds*, 516 F.3d 85 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . 18, n.5

*Jacobson v. Healthcare Fin. Servs.*,
516 F.3d 85 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Johnson v. Orr*,
551 F.3d 564 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Kremer v. Chemical Constr. Corp.*,
456 U.S. 461 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

iv

Page

*Kropelnicki v. Siegel*,
290 F.3d 118 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 19, n.6

*Luria Bros. & Co. v. Alliance Assurance Co.*,
780 F.2d 1082 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Milano v. Astrue*,
2007 U.S. Dist. LEXIS 67840 (S.D.N.Y. Sept. 7, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

*Metro. Opera Ass'n, Inc. v. Local 100*,
*Hotel Employees & Rest. Employees Int'l Union*,
2004 U.S. Dist. LEXIS 17093,
2004 WL 1943099 (S.D.N.Y. Aug. 27, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Moccio v. New York State Office of Court Admin.*,
95 F.3d 195 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Multi-Juice, S.A. v. Snapple Beverage Corp.*,
2006 U.S. Dist. LEXIS 62036,
2006 WL 2517082 (S.D.N.Y. Aug. 31, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Nat'l Market Share, Inc. v. Sterling Nat'l Bank*,
392 F.3d 520 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Nemaizer v. Baker*,
793 F.2d 58 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*O'Connor v. Pierson*,
426 F.3d 187 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Pangburn v. Culbertson*,
200 F.3d 65 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Phifer v. City of New York*,
289 F.3d 49 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Pike v. Freeman*,
266 F.3d 78 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Pipiles v. Credit Bureau of Lockport, Inc.*,
886 F.2d 22 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 13, 17, 18

Page

*Pressley v. Capital Credit & Collection Service, Inc.*,
760 F.2d 922 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*Reichert v. Nat'l Credit Sys.*,
531 F.3d 1002 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, n.5

*Related Tiffany, L.P. v. Faust*,
743 N.Y.S.2d 802 (N.Y. Sup. Ct. App. Term 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Rivet v. Regions Bank of La.*,
522 U.S. 470 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Rooker v. Fidelity Trust Co.*,
263 U.S. 413 (1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, n.6

*Russell v. Equifax A.R.S.*,
74 F.3d 30 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

*Schwartz v. Associated Musicians of Greater N.Y., Local 802*,
340 F.2d 228 (2d Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Shrader v. CSX Transportation, Inc.*,
70 F.3d 255 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 30

*Silber v. Schwartzman*,
575 N.Y.S.2d 226 (N.Y. Sup. Ct. App. Term 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Stoll v. Gottlieb*,
305 U.S. 165 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Travellers Int'l, A.G. v. Trans World Airlines, Inc.*,
41 F.3d 1570, (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Velez v. SES Operating Corp.*,
2008 U.S. Dist. LEXIS 51257 (S.D.N.Y. July 3, 2008) . . . . . . . . . . . . . . . . . . . . . . 29-30

*Vital v. Interfaith Medical Center*,
168 F.3d 615 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Winnik v. Chater*,
1998 U.S. Dist. LEXIS 4094 (S.D.N.Y. Mar. 31, 1998) . . . . . . . . . . . . . . . . . . . . . 2, n.1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

08 CV 3936 (JBW) (LB)

TODD C. BANK,

*Plaintiff*,

-against-

COOPER, PAROFF, COOPER & COOK;
IRA G. COOPER; PHILIP S. PAROFF;
ADAM P. COOPER; and SHARON E. COOK,

*Defendants*.

## **INTRODUCTION**

Plaintiff, Todd C. Bank, submits this Memorandum of Law in support of Plaintiff's motion for an Order: (1) pursuant to Rules 60(b)(1) and 60(b)(6) of the Federal Rules of Civil Procedure, and Rule 6.3 of the Local Civil Rules of the Eastern District of New York, granting reconsideration of the Order of this Court dated May 27, 2009; and (2) granting Plaintiff any other relief deemed just and proper by this Court.

Motions for reconsideration are authorized by Fed. R. Civ. P. 60(b) and Local Civil Rule 6.3. *See Gibson v. Comm'r of Mental Health*, 2009 U.S. Dist. LEXIS 10217 at *3, *6 (S.D.N.Y. Feb. 11, 2009). As explained in *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), "[t]he standard for granting such a motion is *strict*, and reconsideration will generally be denied *unless the moving party can point to controlling decisions or data that the court overlooked -* matters, in other words, that might reasonably be expected to alter the conclusion reached by the court" (emphases added). *See also Milano v. Astrue*, 2007 U.S. Dist. LEXIS 67840 (S.D.N.Y. Sept. 7, 2007):

1

"[T]o be entitled to reargument and reconsideration, the movant must demonstrate that the [c]ourt overlooked controlling decisions or factual matters *that were put before it on the underlying motion*." *Multi-Juice, S.A. v. Snapple Beverage Corp.*, 2006 U.S. Dist. LEXIS 62036, 2006 WL 2517082, at *1 (S.D.N.Y. Aug. 31, 2006) (internal quotation marks and citation omitted). In addition, reconsideration is not appropriate "unless the decisions or data relied upon might *reasonably be expected to alter the conclusion* reached by the court." *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 2004 U.S. Dist. LEXIS 17093, 2004 WL 1943099, at *2 (S.D.N.Y. Aug. 27, 2004) (citing *Shrader* [*v. CSX Transp., Inc.*], 70 F.3d [255] at 257 [(2d Cir. 1995)]).

*Id.* at *5 (emphases added).[1]

While controlling authority is generally thought of as case law, statutes also constitute controlling authority. *See Ionics, Inc. v. Elmwood Sensors*, 110 F.3d 184, 187, n.3 (1st Cir. 1997).

## FACTUAL AND PROCEDURAL BACKGROUND

This action, commenced on September 24, 2008, arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). As a prerequisite to an action against Plaintiff by Plaintiff's landlord in the Housing Part of the New York City Civil Court, Defendants, comprised of a law firm representing the landlord and also comprised of the firm's individual partners, served

---

[1]

As explained in *Winnik v. Chater*, 1998 U.S. Dist. LEXIS 4094 (S.D.N.Y. Mar. 31, 1998):

Under Rule 60(b)(1), a court may grant relief from a final judgment, order, or proceeding because of "mistake, inadvertence, surprise, or excusable neglect." Although 60(b)(1) does not serve as a substitute for appeal, it nevertheless "encompasses judicial mistake in applying the appropriate law." *C.J. Oliver v. Home Indemnity Co.*, 470 F.2d 329, 330 (5th Cir. 1972); *see International Controls Corp. v. Vesco*, 556 F.2d 665 (2d Cir. 1977) (stating that district court's mistake of "substantive legal nature" may be corrected under 60(b)(1))[.]

*Id.* at *6.

2

a "FIVE (5) DAY NOTICE TO TENANT" dated January 14, 2008 ("Rent Notice") (Docket No. 13, Exh. "A"), pursuant to Section 711(2) of the New York Real Property Actions and Proceedings Law ("RPAPL"), which requires that, prior to commencing the type of action that Defendants ultimately brought, "[either] a demand of the rent [be] made, or [a notice be served upon the tenant on] at least three days' notice in writing requiring, in the alternative, the payment of the rent, or the possession of the premises. . . ."

Defendants, in their Answer, dated October 20, 2008 (Docket No. 14), to the Amended Complaint, dated October 20, 2008 (Docket No. 13), asserted a counterclaim under 15 U.S.C. § 1692k(a)(3), which provides that, "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." *See* Docket No. 14, ¶¶ 37-39.

Pursuant to a scheduling order issued by Magistrate Judge Lois Bloom dated December 5, 2008 (Docket No. 17), Plaintiff was to have served, by January 7, 2009, a motion to dismiss Defendants' counterclaim ("Counterclaim-Dismissal Motion"). Service of that motion was made one day late. Thereafter, Defendants notified Magistrate Judge Bloom, by letter dated January 13, 2009 (Docket No. 19), that they had rejected the motion as untimely. To that letter, Plaintiff responded with a letter to Magistrate Judge Bloom that was also dated January 13, 2009 (Docket No. 20), which "request[ed] a conference with the Court in an attempt to resolve this matter without having to engage in what would, I believe, be wasteful motion practice for all concerned." In an order dated January 15, 2009 (Docket No. 21), Magistrate Judge Bloom denied Plaintiff's request for a conference and also ruled that Plaintiff was not entitled to an extension of time to serve the Counterclaim-Dismissal Motion.

On January 19, 2009, Plaintiff served a motion (Docket No. 22), pursuant to Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure, for an order extending the time to serve the Counterclaim-Dismissal Motion, and deeming service of same to have occurred on January 7, 2009 *nunc pro tunc*.

In an order dated February 4, 2009, Magistrate Judge Bloom (Docket No. 26), to whom the motion of January 19, 2009 was assigned by District Judge Jack B. Weinstein, *see* Docket No. 26 at 1, n.1, stated as follows: "[a]s the Court previously endorsed plaintiff's letter, stating that defendants were within their rights to reject the later service of plaintiff's motion as plaintiff could have requested an extension of time to serve his motion, <u>see</u> docket entry 21, the Court construes plaintiff's instant request as seeking *reconsideration*." Docket No. 26 at 1 (italicized emphasis added). Magistrate Judge Bloom proceeded to deny Plaintiff's motion on the grounds that "plaintiff fail[ed] to satisfy the Court that he is entitled to reconsideration." Docket No. 26 at 2.

On February 19, 2009, Plaintiff served a motion (Docket No. 34), pursuant to Rules 12(h)(3), 60(b)(1), and 60(b)(6) of the Federal Rules of Civil Procedure, to vacate the Orders by Magistrate Judge Bloom dated January 15, 2009 (Docket No. 21) and February 4, 2009 (Docket No. 26); and, with respect to the Order by Magistrate Judge Bloom dated February 4, 2009 (Docket No. 26), to alternatively vacate same pursuant to Rule 72(a). In that motion, Plaintiff argued, *inter alia*, that Magistrate Judge Bloom lacked both the statutory and Constitutional authority to issue that part of the Order dated January 15, 2009 (Docket No. 21) that had ruled that Plaintiff did not have the right an extension of time to serve Plaintiff's Counterclaim-Dismissal Motion. Plaintiff's motion also requested, pursuant to Rule 12(h)(3), that the motion be reassigned to an Active District Judge based on Plaintiff's position that Senior Judgeships are un-Constitutional. Finally, Plaintiff requested that his motion for an extension of time to serve his Counterclaim-Dismissal Motion be governed by the

"good cause" standard.

In an order dated February 24, 2009 (Docket No. 36), Judge Weinstein ordered that "[Plaintiff's] motion [dated February 19, 2009; Docket No. 34] challenging the Court's organization is respectfully referred to the Chief Judge Raymond J. Dearie."

Judge Dearie, in an order dated March 31, 2009 (Docket No. 39), denied Plaintiff's motion with respect to Plaintiff's arguments concerning the Constitutionality of Senior and Magistrate Judgeships.[2]

Judge Weinstein, in an order dated May 27, 2009 ("Subject Order") (Docket No. 42), upheld the Order of Magistrate Judge Bloom dated February 4, 2009, (Docket No. 26), and granted Defendant's motion for summary judgment.

## ARGUMENT

## POINT I

## DEFENDANTS WERE NOT ENTITLED TO SUMMARY JUDGMENT

Plaintiff asserted causes of action under five provisions of the FDCPA. These provisions, which correspond to the five Counts alleged in the Amended Complaint (Docket No. 13), are 15 U.S.C. § 1692e(2)(A), 15 U.S.C. § 1692e(5), 15 U.S.C. § 1692e(10), 15 U.S.C. § 1692e(11), and 15 U.S.C. § 1692f(1).

---

[2]

    Judge Dearie stated that Plaintiff, with respect to the Constitutionality of Magistrate Judgeships, limited his arguments to cases that, like the present one, are assigned to a Senior Judge. *See* Docket No. 39 at 1, 2. However, Plaintiff's argument concerning the Constitutionality of Magistrate Judgeships was independent of the fact that this case was assigned to a Senior Judge.

**A.      Summary Judgment Should Not Have Been Granted
on Counts I, II, or III of the Amended Complaint**

Paragraphs 18 and 21 of the Amended Complaint alleged as follows:

> 18.      The Rent Notice stated that Plaintiff was required to
> pay *all of the items* set forth in the Rent Notice, in the absence of
> which Plaintiff was required to "surrender up the possession of [the]
> premises [in which Plaintiff resided] to the Landlord."
>
> ***
>
> 21.      The Rent Notice stated that if Plaintiff were to neither
> pay *all of the items* set forth in the Rent Notice, nor "surrender up the
> possession of [the] premises [in which Plaintiff resided] to the
> Landlord," then "Landlord will commence summary proceedings
> under the Statute to recover possession thereof."

Docket No. 13, ¶¶ 18 and 21 (emphases added). Included among the items demanded in the Rent

Notice were "a 'bad check fee' in the amount of $35.00," Docket No. 13, ¶ 15, and "'late fees' in the

amount of $25.00." Docket No. 13, ¶ 17; *id.*, Exh. "A."

The lease between Plaintiff and his landlord stated:

> Tenant may be required to pay other charges to Landlord under the
> terms of this Lease. They are called "added rent." This added rent will
> be billed and is payable as rent, together with the next monthly rent
> due. If Tenant fails to pay the added rent on time, Landlord shall have
> the same rights against Tenant as if Tenant failed to pay rent. If a
> check from Tenant to Landlord bounces, Tenant shall be charged $25
> for processing costs as added rent. If rent or added rent is not received
> within 5 days of the due date, Landlord may charge the Tenant a late
> fee of (1) $25, or (2) $1\/_{2}$% of the sum due, each month, as added rent.

Lease, ¶ 3 (Docket No. 28, Exh. "A" to the Declaration of Adam P. Cooper in support of

Defendants' summary-judgment motion).

Counts I, II, and III of the Amended Complaint are based on the factual allegations set forth

in Paragraphs 18 and 21 of the Amended Complaint. Those counts arise, respectively, under the

following provisions of the FDCPA:

**Count I** - Section 1692e(2)(A): "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt[,] [including] [t]he false representation of [] the character, amount, or legal status of any debt."

**Count II** - Section 1692e(5): "[a] debt collector may not [engage in] [t]he threat to take any action that cannot legally be taken or that is not intended to be taken."

**Count III** - Section 1692e(10): "[a] debt collector may not [engage in] [t]he use of any false representation or deceptive means to collect or attempt to collect any debt . . . ."

The Subject Order, in dismissing Counts I, II, and III, stated that "[t]he defendants' inclusion of the two fees in the total figure for 'rent' in the five-day demand notice was supported by the terms of the lease (which deemed such fees 'added rent') and by defendants' interpretation of New York housing law. *See Brusco v. Miller*, 639 N.Y.S.2d 246 (N.Y. Sup. Ct. App. Term 1995)." Docket No. 42 at 5. However, *Brusco* supports Plaintiff's position, not Defendants' position. In *Brusco*, the court held that a demand for non-rent items may be included in a rent notice, because such demands "give[] notice of landlords' additional claim for contractual damages provided for in the parties' lease [citation omitted]. These damages, when requested in the rent demand and/or the petition, are a proper subject of recovery in the summary proceeding, albeit they may *only be the source of a money judgment* in the case of a regulated tenancy." *Brusco*, 639 N.Y.S.2d at 247 (emphasis added). However, the court added the following: "[t]o avoid any possibility of confusion or prejudice, claims for rent should be segregated from landlords' other charges *and separately totaled*." *Id.* at 247, n.* (emphasis added). In the present case, the non-rent items that were included in the Rent Notice were itemized, but were neither segregated from the itemizations of rent nor separately totaled; on the

contrary, the non-rent items were totaled *along with* the rent items. Thus, the Rent Notice, rather than indicating that the failure to pay the non-rent items could result only in a money judgment, plainly stated that the failure to pay those items would result in the landlord's right to possession of Plaintiff's apartment, including the right to a possessory judgment if Plaintiff were to not vacate his apartment.

Like *Brusco*, other courts have recognized that where the premises are subject to the New York City Rent Stabilization Law and Code (as are Plaintiff's premises, s*ee* Docket No. 28, Exh. "A," p. 1, Title, to Cooper Aff. in support of Defendants' summary-judgment motion), charges that are not authorized to be levied as rent under the Rent Stabilization Law or Code may not serve as the basis for a possessory judgment, whether or not those charges are authorized as "rent" by the parties' lease. In *Silber v. Schwartzman*, 575 N.Y.S.2d 226 (N.Y. Sup. Ct. App. Term 2002), for example, "[t]he lease in question provide[d] that legal fees and disbursements for legal actions brought by landlord due to tenant's default [we]re payable as additional rent," *id.* at 226-227, but the court held that "attorney's fees may not be considered 'rent' or be awarded as 'additional rent' in order to enable landlord to obtain a possessory judgment, and a lease clause to that effect is unenforceable." *Id.* at 227. The court also recognized, as did *Brusco*, that such charges may be the basis of a money judgment. *See id.*

Like in *Silber*, the landlord in *Related Tiffany, L.P. v. Faust*, 743 N.Y.S.2d 802 (N.Y. Sup. Ct. App. Term 2002), sought to include non-rent charges as part of the basis for a possessory judgment; specifically, "to recover itemized electricity surcharges in addition to base rent, pursuant to a lease clause which deems these surcharges additional rent." *Id.* at 803. The court noted that such charges were explicitly authorized under an amendment to the Rent Stabilization Code, *see id.* at 803-

8

804, although the Code "does not provide that these surcharges are collectible as 'rent[,]' [but that,] [o]n the contrary, the Code was also amended to expressly state that "rent shall not include [electricity] surcharges." *Id.* at 804. As a result, the court concluded that, "[b]ecause the unenforceability is predicated on the proscription of the collection of excess rents, no distinction can be drawn between attorney's fees and *late fees* on the one hand and utility surcharges on the other." *Id.* (emphasis added). *See also 4220 Broadway Assocs. v. Perez*, 723 N.Y.S.2d 816, 817 (N.Y. Sup. Ct. App. Term 2000) ("attorneys' fees do not constitute additional rent in the context of rent regulated tenancies and may not serve as the predicate for an eviction.").

As noted above, Count II of the Amended Complaint arises under Section 1692e(5) of the FDCPA, which states that "[a] debt collector may not [engage in] [t]he threat to take any action that cannot legally be taken or that is not intended to be taken." Defendants, by threatening, in their Rent Notice, to seek to oust Plaintiff of the possession of his apartment in the event that he fails to pay alleged late fees and/or a bounced-check fee, thereby threatened to "take [] action[s] that cannot legally be taken"; for, as explained above, the failure to pay alleged late fees and/or a bounced-check fee may result only in a money judgment, not a possessory judgment.[3]

As noted above, Count III of the Amended Complaint arises under Section 1692e(10) of the FDCPA, which states that "[a] debt collector may not [engage in] [t]he use of any false representation

---

[3]
    The Subject Order quoted the following from *Heintz v. Jenkins*, 514 U.S. 291 (1995), which held that attorneys who engage in debt-collecting litigation are subject to the FDCPA: "we do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, *by itself*, make the bringing of it an 'action that cannot legally be taken.' [under § 1692e(5)]." Docket No. 42 at 5-6, quoting *Heintz*, 514 U.S. at 296 (additional quotation marks omitted) (emphasis added). The quoted statement simply means that the mere lack of success in a lawsuit brought by a debt-collecting attorney would not automatically constitute a violation of Section 1692e(5), *i.e.*, making a threat to bring an "action that cannot legally be taken." On the other hand, nothing in the Court's statement, nor elsewhere in its opinion, suggests that the outcome of a lawsuit, whether successful of not, precludes liability under the FDCPA.

or deceptive means to collect or attempt to collect any debt . . . ." Defendants, by stating, in their Rent Notice, that Plaintiff, in the event that he fails to pay alleged late fees and/or a bounced-check fee, would be subject to losing possession of his apartment, thereby engaged in "the use of a[] false representation [and] deceptive means to collect or attempt to collect any debt"; for, again, the failure to pay alleged late fees and/or a bounced-check fee may result only in a money judgment, not a possessory judgment. That is, Defendants utilized a false representation and deceptive means in order to induce Plaintiff to pay alleged late fees and/or a bounced-check fee.

**B.      Summary Judgment Should Not Have Been
         Granted on Count IV of the Amended Complaint**

Count IV of the Amended Complaint arises under Section 1692e(11) of the FDCPA, which states that "[a] debt collector may not [engage in] the failure to disclose in [all] communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action." The Rent Notice contains no such representation. *See* Docket No. 13, ¶ 24. In dismissing this claim, the Subject Order stated that "[t]he thirty-day debt validation letter contained the required disclosures that a debt collector was attempting to collect a debt and that any information obtained would be used for that purpose." Docket No. 42 at 6-7, citing 15 U.S.C. § 1692e(11). This Court then explained, as follows, its reasoning for dismissal:

> The five-day demand notice lacks the language used in the thirty-day debt validation letter, but it is obvious from the face of the letter that the communication is from a "debt collector." *See Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 26 (2d Cir. 1989) ("We reject at the outset [plaintiff's] contention that the Notice violated the statute because it failed to state in so many words that the Bureau was attempting to collect a debt."); *Emanuel v. American Credit Exchange*, 870 F.2d 805, 808 (2d Cir. 1989) ("the letter disclosed clearly that it was a communication to collect a debt . . . there simply is no requirement that the letter quote verbatim the language of the

statute").

Docket No. 42 at 7. *Pipiles* and *Emanuel* are inapposite. In *Pipiles*, the court noted that the notice at issue:

> demanded payment of one-half of an outstanding amount of $ 135.00. Across the top of the Notice was printed in large type "48 HOUR NOTICE." The Notice also stated in capital letters that: "Notice is Hereby Given That This Item Has Already Been Referred For Collection Action," "We Will At Any Time After 48 Hours Take Action As Necessary And Appropriate To Secure Payment In Full," and "Pay This Amount Now If Action Is To Be Stopped." As for the source of the debt, a handwritten notation under the legend "On The Account Of" read "Drs Sippel, Doyle & Murray & Cardiology Associates 135.00". The Notice also contained the handwritten notations "for Patricia & Tina" and "Your ex-husband John Julius states that you are responsible for 1/2 the stated amount. Please remit to this office by 4-15-87," as well as the name and address of [the plaintiff] (as addressee), and the name, address and telephone number of the [defendant].

*Pipiles*, 886 F.2d at 24. In *Emanuel*, the court explained that "the letter [at issue] not only stated that [the plaintiff]'s account had been turned over to [the defendant] 'for immediate collection,' but it actually told [the plaintiff] how and where to make payment so as to satisfy the indebtedness. Despite [the plaintiff]'s assertion to the contrary, there simply is no requirement that the letter quote verbatim the language of the statute." *Emanuel*, 870 F.2d at 808.

Defendants' Rent Notice does not even imply, much less explicitly state, that Defendants are debt collectors. At the bottom of the letter is the name and address of Defendants' law firm, with nothing in that name or address that indicates that the law firm is a debt collector. In addition, the letter merely states that Plaintiff is "justly indebted to the Landlord," and that, in the absence of Plaintiff's payment, or surrender of his apartment, "Landlord will commence summary proceedings under the Statute to recover possession thereof." Moreover, the Rent Notice does not indicate that

11

Defendants' law firm would be involved in such a legal action. In addition, the Rent Notice does not

state that payment of the debt should be sent to the law firm. Furthermore, the Rent Notice, beneath

the dateline, contains the following: "KEW GARDENS REALTY CO."; "[b]y: L. Andrew Levine."

In short, the Rent Notice does not make clear what role, if any, Defendants' law firm had with respect

to the collection of the purported debt at issue.

The Subject Order then stated:

> Alternatively, the five-day demand notice must be read together with
> the thirty-day debt validation letter – as any consumer would – since
> they bear the same date. All required disclosures were provided to
> plaintiff in the initial communication consisting of those two
> documents. "[T]here is nothing wrong with demanding payment of the
> debt at the same time the validation notice is given." *Day v. Allied
> Interstate, Inc.*, No. 09-495, 2009 WL 1139474, at *2 (E.D.N.Y.
> Apr. 27, 2009) (citing *Jacobson v. Healthcare Financial Services,
> Inc.*, 516 F.3d 85, 90 n.4 (2d Cir. 2008)).

Docket No. 42 at 7. *Day* and *Jacobson* are inapposite, as each of those cases concerned a single

document, *see Day*, 2009 U.S. Dist. LEXIS 35156 at *1; *Jacobson*, 516 F.3d at 87-88, whereas the

Subject Order treated two separate documents as though they were a single document. As the Subject

Order noted, "[t]he five-day demand notice and the thirty-day debt validation letter were prepared

on the same day [but] Plaintiff likely did not receive the two documents at the same time, because one

was mailed and one was served by a process server." Docket No. 42 at 6, citing Hr'g Tr. at 9.[4]

In *Pressley v. Capital Credit & Collection Service, Inc.*, 760 F.2d 922 (9th Cir. 1985), the

court held that, where "a follow[-]up notice . . . only demands a payment as earlier requested[,] . .

. [a] requir[ement] [that] the debt collector . . . make affirmative disclosures in this narrow type of

---

[4]

Even if Plaintiff had received those documents at the same time, they would remain separate
documents, each of which would be required, on its face, to comply with the statute.

follow[-]up notice, would ignore the balancing mandated by Congress." *Id.* at 925. However, the

Second Circuit rejected this reasoning:

> in providing that "all communications" contain the required
> disclosures, Congress appears to have precluded the "balancing"
> suggested in *Pressley*. Were balancing undertaken, allowing certain
> communications to omit the disclosures, the clear and unambiguous
> language "*all* communications" would effectively be changed to "*some*
> communications." . . . By requiring disclosure in all communications,
> Congress has ensured that even if the first notice is not received by the
> consumer, as [the plaintiff] claims occurred here, subsequent notices
> will nonetheless provide the consumer with the requisite disclosures.
> Third, even if there were little discernible purpose in repetition,
> Congress could exercise its legislative judgment to adopt a reasonable
> margin of safety to insure its remedial goal. We are not at liberty to
> substitute a view different from that expressed by Congress in the
> legislative enactment.

*Pipiles*, *supra*, 886 F.2d at 27 (emphases in original). Thus, *each communication* from a debt

collector must, as *Pipiles* makes clear, *independently* comply with those statutory requirements that

govern that type of communication, as recognized in *Foti v. NCO Financial Systems, Inc.*, 424 F.

Supp. 2d 643, 668 (S.D.N.Y. 2006) ("'[a] debt collector satisfies subsection [e]11's notice

requirement as long as it is clear *from the subsequent letter* that the sender is a debt collector,'"

quoting *Epps v. Etan Industries, Inc.*, 1998 U.S. Dist. LEXIS 19120 at *27 (N.D. Ill. Nov. 30,

1998).

**C.     Summary Judgment Should Not Have Been
        Granted on Count V of the Amended Complaint**

Count V of the Amended Complaint arises under Section 1692f(1) of the FDCPA, which

states that "[a] debt collector may not [engage in] [t]he collection of any amount (including any

interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly

authorized by the agreement creating the debt or permitted by law." As the Amended Complaint

alleges, "[t]he Rent Notice demanded that Plaintiff pay a 'bad check fee' in the amount of $35.00." Docket No. 13, ¶ 15, but that "[t]he agreement that created Plaintiff's liability for the aforementioned 'bad check fee' authorized a 'bad check fee' in an amount of no greater than $25.00." *Id.*, ¶ 16.

Defendants, in their summary-judgment motion, sought dismissal of Count V based on 15 U.S.C. § 1692k(c), which states that "[a] debt collector may not be held liable . . . if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

Because the factual assertions made by Defendants in support of their request for the dismissal of Count V were confined to their Memorandum of Law, rather than being asserted in a form that constitutes admissible evidence, their request for dismissal should have been denied. Despite the fact that Defendants clearly were not entitled to dismissal, the Subject Order nevertheless dismissed Count V, explaining as follows:

> [Defendants] contend that the incorrect fee amount was conveyed to their office by the landlord, despite their procedure of accepting such information only in writing rather than over the phone in order to prevent clerical errors.
>
> Defendants have the burden of proving by a preponderance of the evidence both: 1) that the violation was unintentional and; 2) that it resulted from a bona fide error notwithstanding procedures reasonably adapted to avoid any such error. Whether the ten dollar overstatement "resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error," 15 U.S.C. § 1692k(c), is an issue of fact. At the summary judgment hearing, the plaintiff declined the court's offer to take sworn testimony of the attorney who supervised the issuance of the complained-of notice. *See* Hr'g Tr. 10-17. Given plaintiff's waiving his right to admissible evidence on this point, defendants' submission (made by a practicing attorney) is credited. The issue is *de minimis*.

14

> It does not warrant burdening this court and the parties with discovery. Nevertheless, the issue is decided in favor of the defendant. A reasonable jury could only conclude that this discrepancy was the result of a bona fide error. Plaintiff conceded as much at oral argument. *See id.* at 25 ("I'm not suggesting, by the way, that it was anything more than a clerical error").

Docket No. 42 at 8-9.

It was improper of this Court to take oral testimony from Adam P. Cooper, who is one of the defendants and counsel to all of them. Although it has been stated that "a District Court may take oral testimony on a summary judgment motion pursuant to Rule 43([c]) of the Federal Rules of Civil Procedure," *Vital v. Interfaith Medical Center*, 168 F.3d 615, 621 (2d Cir. 1999), citing *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 42 n.2 (2d Cir. 1986), there is no support for the notion that such oral testimony may be used to negate a summary-judgment movant's failure to comply with the rules relating to such motion. As Plaintiff noted in opposing Defendants' summary-judgment motion, Defendants' failure to submit admissible evidence in support of their request for summary judgment on Count V was itself a sufficient basis for the denial of that request. *See* Plaintiff's Memorandum of Law, dated Feb. 4, 2009, in Opposition to Defendants' Motion for Summary Judgment at 2-4, 10-12 (Docket No. 31).

If the factual contentions contained in Defendants' Memorandum of Law with respect to Count V had been submitted in proper, *i.e.*, evidentiary, form, Plaintiff would have had the right to seek appropriate discovery under Rule 56(f) of the Federal Rules of Civil Procedure, which states that "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3)

issue any other just order." However, as those facts were not properly asserted, Plaintiff was not obligated to seek to refute them, as there was, for summary-judgment purposes, nothing to refute. *See* Docket No. 31 at 2-4, 10-12.

Defendants were permitted to move for summary judgment even though the parties were not permitted to conduct any pre-motion discovery. *See* Order of Magistrate Bloom, dated Dec. 5, 2008 (Docket No. 17). Arguably, this was not improper in and of itself. *See Hellstrom v. United States Dep't of Veterans Affairs*, 201 F.3d 94 (2d Cir. 2000):

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) . . . .
>
> However, summary judgment should only be granted "*if after* discovery, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof. The nonmoving party must have had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment. Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.

*Id.* at 97 (citations and quotation marks omitted) (emphasis in original). However, Defendants' motion should have been limited to matters that could be resolved solely as matters of law. *See Grudzinski v. Staren*, 87 Fed. Appx. 508, 511 (6th Cir. 2004) ("[b]ecause the district court did not need additional facts to decide the dispositive legal issues, the court properly granted summary judgment without allowing discovery."); *Bolin v. United States*, 1999 U.S. Dist. LEXIS 19854 at *3 (N.D. Ga. July 16, 1999) ("staying discovery because a motion for summary judgment based solely on legal issues is pending before the Court, and further discovery at this point would be unnecessary

and wasteful."); *Ferragamo v. Signet Bank/Maryland*, 1992 U.S. Dist. LEXIS 21602 at *10, n.6 (D. Md. Mar. 17, 1992) ("[a]lthough the instant motion is one for summary judgment, it is analogous to a motion to dismiss, as it is not based on discovery or supporting affidavits."); *Bloom v. Niagara Falls Housing Authority*, 430 F. Supp. 1183, 1186 (W.D.N.Y. 1977) ("[w]here issues before the court are not factual but deal solely with questions of law, those legal issues may be appropriately resolved by summary judgment," citing *Schwartz v. Associated Musicians of Greater N.Y., Local 802*, 340 F.2d 228 (2d Cir. 1964), which stated that "[t]he district court properly concluded that the only questions were questions of law and that the controversy could accordingly be resolved by summary proceedings." *Schwartz*, 340 F.2d at 233).

With respect to this Court's finding that the issue of whether Count V is a valid claim is "*de minimis*," Docket No. 42 at 8, such a finding concerns only the Court's discretion of whether to award statutory damages, but does not confer discretion on the Court to withhold costs and reasonable attorney's fees. *See Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989); *Emanuel v. American Credit Exchange*, 870 F.2d 805, 800 (2d Cir. 1989).

The Subject Order states that "[a] reasonable jury could only conclude that this discrepancy was the result of a bona fide error. Plaintiff conceded as much at oral argument. *See* [Hr'g Tr.] at 25 ('I'm not suggesting, by the way, that it was anything more than a clerical error')." First, while Plaintiff's opinion would not be relevant in any event, the quotation shows that Plaintiff was not giving an opinion on what he believed a jury could or might find, but was merely stating his own belief. More specifically, Plaintiff's own belief is further irrelevant because "the Act imposes strict liability, [such that] a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996). The court continued:

"[h]owever, a debt collector may escape liability if it can demonstrate by a preponderance of the evidence that its "'violation [of the Act] was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.'" *Id.* at 33-34, quoting 15 U.S.C. § 1692k(c). *See also Pipiles*, *supra* 886 F.2d at 28 (it is "a defense to [FDCPA] violations if [the defendant] '[show[s]] by a preponderance of the evidence that the violation was not intentional *and* resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *Id.* at 26, quoting 15 U.S.C. § 1692k(c) (emphasis in original). Thus, a jury's finding that Defendants' violation was caused by a clerical error would satisfy only the first of the two prongs of the bona-fide defense, the burden of which belongs to Defendants.[5]

Finally, a reasonable jury certainly could find that "[Defendants'] procedure of accepting [] information [concerning fees] only in writing rather than over the phone in order to prevent clerical errors," Docket 42 at 8, are not "reasonably adapted to avoid any such error": this arrangement does little to ensure that errors are avoided, for a creditor itself (in this case the landlord) could easily make an error. Rather, Defendants should have simply looked at the parties' lease, which, as noted above, limited the bounced-check fee to $25.00. In any event, Plaintiff need not argue that a jury would be certain to find in favor of Plaintiff on this issue; however, it cannot be said that a jury would be precluded from doing so.

---

[5]

The bona-fide defense, by virtue of its burden belong to a defendant, is an affirmative defense. *See Reichert v. Nat'l Credit Sys.*, 531 F.3d 1002, 1008 (9th Cir. 2008); *Jacobson v. Healthcare Fin. Servs.*, 434 F. Supp. 2d 133, 137 (E.D.N.Y. 2006), *rev'd in part on other grounds*, 516 F.3d 85 (2d Cir. 2008).

## POINT II

## THIS ACTION IS NOT PRECLUDED BY THE *ROOKER-FELDMAN* DOCTRINE

The Subject Order states that "[c]ourts should avoid finding a[n] FDCPA violation on grounds that may be inextricably intertwined with the merits of a state court proceeding." Docket No. 42 at 5, citing *Kropelnicki v. Siegel*, 290 F.3d 118, 128 -129 (2d Cir. 2002), as "concluding [that the] *Rooker-Feldman* doctrine applied to bar the federal Court of Appeals from reviewing [a] claim of [a] 'violation of the FDCPA on the basis of the defendant's alleged misrepresentation' because it was 'inextricably intertwined with the state court default judgment and the motion to vacate it')." Docket No. 42 at 5.[6] In *Kropelnicki*, the court had stated that "[a] claim is inextricably intertwined under *Rooker-Feldman* when 'at a minimum, . . . a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), . . . [and] the claim . . . would be barred under the principles of preclusion.'" *Kropelnicki*, 290 F.3d at 128, quoting *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 199-200 (2d Cir. 1996), which had held that *Rooker-Feldman* was "effectively coextensive with doctrines of claim and issue preclusion." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). *See also Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002) (citing *Moccio* for the proposition that "[t]here is no question that *Rooker-Feldman* bars . . . challenges to the [state] family court's decisions regarding custody, neglect, and visitation," provided those issues had been litigated before the family court). However, the *Moccio* line of cases was abrogated by *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005):

---

6

The *Rooker-Feldman* doctrine is based on *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). *See Kropelnicki*, 290 F.3d at 128.

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries *caused by* state-court judgments rendered before the district court proceedings commenced and inviting district court *review and rejection of those judgments*. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

*Exxon Mobil*, 544 U.S. at 284 (emphases added). Indeed, the *Exxon Mobil* Court cited *Moccio* as emblematic of cases that had incorrectly extended *Rooker-Feldman* "far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738." *Exxon Mobil*, 544 U.S. at 283.[7]

In *Hoblock*, *supra*, the Second Circuit acknowledged that the *Moccio* line of cases was "incorrect" in light of the Supreme Court's "teach[ing] that *Rooker-Feldman* and preclusion are entirely separate doctrines." *Hoblock*, 422 F.3d at 85. The *Hoblock* court explained that "[t]he 'inextricably intertwined' language from *Feldman* led lower federal courts, including this court in *Moccio* . . ., to apply *Rooker-Feldman* too broadly." *Id.* at 86. Noting that *Exxon Mobil* had "quote[d] *Feldman*'s use of the phrase ['inextricably intertwined'] but [had] not otherwise explicate[d] or employ[ed] it," *Hoblock*, 422 F.3d at 86, the *Hoblock* court concluded that "it appears that describing a federal claim as 'inextricably intertwined' with a state-court judgment only states

---

[7]

28 U.S.C. § 1738, known as the Full Faith and Credit Act, provides, in relevant part, that "[the] Acts, records[,] and judicial proceedings [of any State, Territory, or Possession of the United States] or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

a conclusion," *id.* at 86; that is, the phrase "has no independent content [but] is simply a descriptive

label attached to claims that meet the requirements outlined in *Exxon Mobil*." *Id.* at 87.

As the *Exxon Mobil* Court explained,

> *Rooker* and *Feldman* exhibit the limited circumstances in which th[e] [Supreme] Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction . . . . In both cases, the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury *caused* by the state-court judgment *and seeking review and rejection of that judgment*. Plaintiffs in both cases, alleging federal-question jurisdiction, called upon the District Court to overturn an injurious state-court judgment. Because § 1257, as long interpreted, vests authority to review a state court's judgment solely in this Court, the District Courts in *Rooker* and *Feldman* lacked subject-matter jurisdiction.

*Exxon Mobil*, 544 U.S. at 291-292 (citations omitted) (emphases added).

*Hoblock* recognized that *Exxon Mobil* had "pared back the *Rooker-Feldman* doctrine to its

core, holding that it 'is confined to cases of the kind from which the doctrine acquired its name: cases

brought by state-court losers complaining of injuries *caused by state-court judgments* rendered before

the district court proceedings commenced and inviting district court *review and rejection* of those

judgments.'" *Hoblock*, 422 F.3d at 85, quoting *Exxon Mobil*, 544 U.S. at 284 (emphases added). The

*Hoblock* court continued:

> From th[e] holding [in *Exxon Mobil*], we can see that there are four requirements for the application of *Rooker-Feldman*. First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[] of injuries *caused by* [a] state-court judgment[.]" Third, the plaintiff must "invite district court *review and rejection* of [that] judgment[]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced" - *i.e.*, *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. The first and fourth of these requirements may be loosely termed

procedural; the second and third may be termed substantive.

*Hoblock*, 422 F.3d at 85 (brackets within the court's quotations are in the original) (emphases added).

As the *Hoblock* court further observed, "[t]he first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive." *Id.* at 85. The issue of whether the *Rooker-Feldman* doctrine bars the present action may be resolved based on a review of the second requirement,[8] which the *Hoblock* court recognized as "the core requirement from which the others derive," *id.* at 87, and interpreted as follows:

> a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are *produced by a state-court judgment* and *not simply ratified, acquiesced in, or left unpunished by it*. Where a state-court judgment *causes* the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court can hear. This formula dovetails with the *Rooker-Feldman* requirement about timing that we have termed "procedural," *i.e.*, the requirement that the federal suit be initiated after the challenged state judgment. If federal suits cannot be barred by *Rooker-Feldman* unless they complain of injuries produced by state-court judgments, it follows that *no federal suit that precedes a state-court judgment will be barred*; the injury such a federal suit

---

[8]

In *Hoblock*, the court explained:

> One could argue that the[] second and third requirements are not distinct - *i.e.*, that to complain of injuries caused by a state-court judgment is necessarily to invite review and rejection of that judgment. The Court's shorthand description of *Rooker* and *Feldman* as cases in which "loser in state court invites federal district court to overturn state-court judgment," *Exxon Mobil*, 544 U.S. at 288, n.2, supports such an argument: the single aphrase "invites federal district court to overturn state-court judgment" seems to capture the ideas of both complaining about injuries caused by the judgment and seeking its review and rejection. We believe, however, that conceiving these as two separate requirements makes *Rooker-Feldman*'s contours easier to identify.

*Hoblock*, 422 F.3d at 85, n.4.

> seeks to remedy cannot have been produced by a state-court judgment that did not exist at the federal suit's inception.

*Hoblock*, 422 F.3d at 88 (emphases added). *See also Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008) ("*Rooker-Feldman* bars subject matter jurisdiction where 'but for' the state-court judgment the plaintiff would have no claim"). In addition:

> Nor does [28 U.S.C.] § 1257[9] stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.

*Exxon Mobil*, 544 U.S. at 293 (internal quotation marks and citation omitted; brackets and ellipsis in original). As recognized in *Hoblock*, "[t]his language describes a set of federal suits - those raising 'independent claims' - that are outside *Rooker-Feldman*'s compass even if they involve the identical subject matter and parties as previous state-court suits." *Hoblock*, 422 F.3d at 86. The *Hoblock* court then illustrated this principle:

> Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-

---

9

28 U.S.C. § 1257(a) provides that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of *certiorari* . . . where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of . . . the United States."

court judgment. [FN]6

[FN]6 The subsequent federal suit could, of course, be barred by ordinary preclusion principles. *See Exxon Mobil*, 544 U.S. at 293.

*Hoblock*, 422 F.3d at 88.

Although the present action was commenced after the state court had issued its judgment, that judgment did not *cause* the injuries of which Plaintiff complains in the present action; rather, those injuries, *i.e.*, the violations of the FDCPA, were caused by the service of Defendants' Rent Notice. Thus, Plaintiff's FDCPA claims, rather than having been caused by the state-court judgment, are, instead, independent of it, and are therefore not subject to the *Rooker-Feldman* doctrine.

Because of the relationship between the *Rooker-Feldman* doctrine and the doctrines of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion), the next Point addresses those doctrines.

## POINT III

### THIS ACTION IS NOT PRECLUDED BY *RES JUDICATA* (CLAIM PRECLUSION) OR COLLATERAL ESTOPPEL (ISSUE PRECLUSION)

As noted in *Hoblock*, *supra*, "[c]laim and issue preclusion are affirmative defenses that frequently turn on pure questions of law, or on the application of law to undisputed facts." *Hoblock*, 422 F.3d at 93. *See also Nat'l Market Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520 (2d Cir. 2004):

> Fed. R. Civ. P. . . . 8(c) provides that a defendant, "in pleading to a preceding pleading, . . . shall set forth affirmatively . . . any . . . matter constituting an avoidance or affirmative defense." Fed. R. Civ. P. 8(c) (listing as examples, ". . . estoppel, . . ., *res judicata* . . . ." *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994).

24

According to Fed. R. Civ. P. 15(b), "when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." If an affirmative defense is neither pled nor tried with the parties' consent, the defense is usually waived. *See Luria Bros. & Co. v. Alliance Assurance Co.*, 780 F.2d 1082, 1089 (2d Cir. 1986).

*Id.* at 526 (ellipses added in listing of examples).

*Res judicata* and collateral estoppel do not concern subject-matter jurisdiction. *See O'Connor v. Pierson*, 426 F.3d 187, 194 (2d Cir. 2005) ("[c]laim preclusion is an affirmative defense; it does not go to subject-matter jurisdiction," citing *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998), and Fed. R. Civ. P. 8(c); *see also Harris v. N.Y.S. Dep't of Health*, 202 F. Supp. 2d 143 (S.D.N.Y. 2002):

By casting the [*Rooker-Feldman*] doctrine as one barring federal court jurisdiction, the Supreme Court necessarily underscored the substantive and procedural distinctions between *Rooker-Feldman* and the preclusion effects of *res judicata* and collateral estoppel. Absence of subject matter jurisdiction operates as a bar to the exercise of the courts' power to consider the merits of a case, and may be raised at any point, even *sua sponte* by the court . . . .

By contrast, *res judicata* and collateral estoppel, resting on common law principles, are affirmative defenses which, if not pleaded, may be waived. *See* Fed. R. Civ. P. 8(c); *Rivet v. Regions Bank*, 522 U.S. 470, 474 (1998); *Pangburn v. Culbertson*, 200 F.3d 65, 68 n.1 (2d Cir. 1999) . . . .

. . . insofar as *res judicata* and collateral estoppel apply in federal actions to require the courts to accord preclusive effect to prior state adjudications, the mandate derives not from a jurisdictional statute, but from 28 U.S.C. § 1738 and general comity principles. *See Allen* [*v. McCurry*], 449 U.S. [90] at 96 [(1980)]; *Kremer* [*v. Chemical Constr. Corp.*], 456 U.S. [461] at 466 [(1982)]. . . .

***

. . . the application of *res judicata* and collateral estoppel presumes the exercise of the court's subject matter jurisdiction to

25

> review so much of the merits of a particular action as would allow a substantive determination of what issues or claims may have been resolved in some prior proceeding, thereafter barring collateral relitigation of those matters in another forum. *See Stoll v. Gottlieb*, 305 U.S. 165, 171-72 (1938); *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986); *see generally* 18 Moore's Federal Practice § 131.30[1][d][ii]-[iii].

*Id.* at 160-161.

As explained in *Hoblock, supra*:"[b]ecause the Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to accord state judgments the same preclusive effect those judgments would have in the courts of the rendering state, New York preclusion law applies." *Hoblock*, 422 F.3d at 93.

## A.      This Action Is Not Precluded by *Res Judicata* (Claim Preclusion)

Defendants, by not asserting the affirmative defense of *res judicata*, have thereby waived it. *See* Defendant's Answer to Amended Complaint (Docket No. 14). Even if Defendants had asserted *res judicata*, the doctrine would be inapplicable in any event.

As noted in *Pike v. Freeman*, 266 F.3d 78 (2d Cir. 2001): "[u]nder both New York law and federal law, the doctrine of *res judicata*, or claim preclusion, provides that [a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Id.* at 91, n.14 (brackets in original; citations and quotation marks omitted). As explained in *Burka v. New York City Transit Auth.*, 32 F.3d 654 (2d Cir. 1994), "New York adheres to a transactional analysis of *res judicata*, barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief. This bar will not apply, however, where the initial forum did not have the *power to award the full measure of relief sought in the later litigation*." *Id.* at 657

26

(emphasis added).

While Plaintiff could have sought dismissal of the state-court action based on violations of the FDCPA, *see Eina Realty v. Calixte*, 679 N.Y.S.2d 796, 800 (N.Y.C. Civ. Ct. 1998) ("the failure to serve a proper rent demand (*i.e.*, one which complies with the FDCPA) requires dismissal of the petition without prejudice"), Plaintiff could not have sought damages under the FDCPA in the state-court action. First, Defendants were counsel to Plaintiff's landlord in that action, not parties to it. Second, N.Y. CPLR § 1007, which governs third-party practice, did not give Plaintiff the right to implead Defendants in the state-court action. Under CPLR § 1007, "a defendant may proceed against a person not a party who is or may be liable to that defendant for all or part of the plaintiff's claim against that defendant." Accordingly, "[t]he liability sought to be imposed upon a third-party defendant must arise from or be conditioned on the liability asserted against the third-party plaintiff in the main action." *Amorizzo v. Conte*, 2008 N.Y. Misc. LEXIS 5969 at *3 (N.Y. Sup. Ct. Sept. 19, 2008), citing *BBIG Realty Corp. v Ginsberg*, 489 N.Y.S.2d 224, 226 (N.Y. App. 1985). Defendants' potential liability to Plaintiff under the FDCPA did not arise from, nor was conditioned upon, the claims made in the state-court action by Plaintiff's landlord against Plaintiff. In sum, the state court did not have the power to award Plaintiff damages for violations of the FDCPA; therefore, *res judicata* is inapplicable to the present action.

**B.     This Action Is Not Precluded by Collateral Estoppel (Issue Preclusion)**

Defendants, by not asserting the affirmative defense of collateral estoppel (issue preclusion), have thereby waived it. *See* Defendant's Answer to Amended Complaint (Docket No. 14). Even if Defendants had asserted collateral estoppel, it would be inapplicable in any event.

As noted in *Hoblock*, *supra*: "[u]nder New York law, issue preclusion will apply only if (1)

27

the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Hoblock*, 422 F.3d at 94 (brackets in original; citations and quotation marks omitted). Because Plaintiff's FDCPA claims were not litigated in the state-court action, collateral estoppel is inapplicable to the present action.

## POINT IV

### THE FEBRUARY 4, 2009 ORDER OF MAGISTRATE JUDGE BLOOM WAS ISSUED IN VIOLATION OF RULE 6(b)(1)(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE

In response to Plaintiff's argument that Magistrate Judge Bloom, in the Order dated February 4, 2009 (Docket No. 26), improperly treated Plaintiff's motion, made pursuant to Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure (Docket No. 22), as a motion for reconsideration of the Order of Magistrate Judge Bloom dated January 15, 2009 (Docket No. 21), which had been issued in response to a letter by Plaintiff to Magistrate Judge Bloom dated January 13, 2009 (Docket No. 20), the Subject Order stated: "Plaintiff's arguments about the minutiae of Federal Rule of Civil Procedure 6(b)(1)(B) . . . fail to recognize that a court has broad discretion on whether to grant an extension under that rule. Rule 6(b)(1)(B), if it limits the court's discretion at all, controls it in the context of granting such a motion, not in *denying* it. The magistrate judge acted well within her discretionary powers in refusing the request for an extension." Docket No. 42 at 2-3 (emphasis in original). In addition, while the Subject Order stated that "[Plaintiff] claims that he was prejudiced by the fact that once he did make a formal motion for an extension, the magistrate judge treated it as a motion for reconsideration," Docket No. 42 at 2, the Subject Order never addressed that argument. As set forth below, however, the treatment of Plaintiff's Rule 6(b)(1)(B) motion as a motion for reconsideration

28

indisputably violated Rule 6(b)(1)(B).

On January 19, 2009, Plaintiff served a motion to dismiss Defendants' counterclaim ("Counterclaim-Dismissal Motion") (Docket No. 22). That motion was served one day later than had been required by the scheduling order, dated December 5, 2008, that Magistrate Judge Bloom had issued (Docket No. 17). Thus, even if Defendants had not rejected service of Plaintiff's motion, which Defendants did on January 13, 2009 (Docket No. 19), Plaintiff, in order to have had the Counterclaim-Dismissal Motion accepted by the court was, at least in the absence of consent by Defendants, required to move for relief under Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure, which states that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time: . . . on motion made after the time has expired if the party failed to act because of excusable neglect."

Instead of making a motion under Rule 6(b)(1)(B), Plaintiff, on January 13, 2009, sent a letter to Magistrate Judge Bloom, which "request[ed] a conference with the Court in an attempt to resolve this matter without having to engage in what would, I believe, be wasteful motion practice for all concerned" (Docket No. 20). Despite the fact that Plaintiff had not made a motion, Magistrate Judge Bloom denied Plaintiff's request for a conference, in an order that stated in full:

> Plaintiff's request for a conference is DENIED. As to whether plaintiff's late Motion to Dismiss defendant's counterclaims would prejudice defendants - plaintiff could have requested an extension of time. He did not do so. Therefore, *defendants were within their rights to reject the late service*.

(emphases added) (Docket No. 21).

Accordingly, Plaintiff, having not yet made a Rule 6(b)(1)(B) motion, did so on January 19, 2009 (Docket No. 22). This motion was made as of right. *See Velez v. SES Operating Corp.*, 2008

U.S. Dist. LEXIS 51257 at *2 (S.D.N.Y. July 3, 2008) ("parties have the right to make whatever motions are permitted by the Federal Rules of Civil Procedure.").

In an order dated February 4, 2009 (Docket No. 26), Magistrate Judge Bloom, to whom Plaintiff's Rule 6(b)(1)(B) motion was assigned by Judge Weinstein, *see* Docket No. 26 at 1, n.1, stated as follows: "[a]s the court previously endorsed plaintiff's letter, stating that defendants were within their rights to reject the later service of plaintiff's motion as plaintiff could have requested an extension of time to serve his motion, <u>see</u> docket entry 21, the Court construes plaintiff's instant request as seeking *reconsideration*." Docket No. 26 at 1 (emphasis added).

Magistrate Judge Bloom, in treating Plaintiff's Rule 6(b)(1)(B) motion as a motion for reconsideration, actually denied Plaintiff his right to make a Rule 6(b)(1)(B) motion. The right to make a particular motion necessarily includes the right to have the motion resolved in accordance with the criteria that govern that motion; here, good cause and a showing of excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B). On the other hand, the standard for granting a motion for reconsideration is different. *See Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("[t]he standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.").

Because Magistrate Judge Bloom treated Plaintiff's Rule 6(b)(1)(B) motion as though it were a motion for reconsideration, Magistrate Judge Bloom never applied the Rule 6(b)(1)(B) standards to Plaintiff's Rule 6(b)(1)(B) motion, which Plaintiff had made *as of right*. Even if Magistrate Judge Bloom had applied the Rule 6(b)(1)(B) standards when issuing the Order dated January 15, 2009

(Docket No. 21), that ruling, as noted above, was issued in response to a *letter*, not a *motion*.[10]

Finally, by stating, in the February 4, 2009 Order (Docket No. 26) that Plaintiff's Rule 6(b)(1)(B) motion (Docket No. 22) would be treated as a motion for reconsideration of the January 15, 2009 Order (Docket No. 21), Magistrate Judge Bloom appears to have considered the January 15, 2009 Order to have ruled that Plaintiff was not entitled to an extension of time to serve his Counterclaim-Dismissal Motion. However, the January 15, 2009 Order (Docket No. 21), upon denying Plaintiff's request for a conference, merely stated that "[a]s to whether plaintiff's late Motion to Dismiss defendant's counterclaims would prejudice defendants - plaintiff could have requested an extension of time. He did not do so. Therefore, *defendants were within their rights to reject the late service*." Docket No. 26 (emphasis added). Thus, the February 4, 2009 Order (Docket No. 26) did not actually deny Plaintiff an extension of time to serve his Counterclaim-Dismissal Motion, but merely ruled that Defendants had the right to reject the late service of that motion, a fact that Plaintiff has not disputed. While it would have been improper of Magistrate Judge Bloom to have denied Plaintiff his right to make a Rule 6(b)(1)(B) motion even if the January 15, 2009 Order (Docket No. 21) had denied Plaintiff an extension of time to serve his Counterclaim-Dismissal Motion, the fact that the January 15, 2009 Order did not deny such an extension is an additional, and independent reason, why Magistrate Judge Bloom's treatment of Plaintiff's Rule 6(b)(1)(B) motion as a motion for reconsideration was improper.

---

[10]

Plaintiff's letter dated January 13, 2009 (Docket No. 20) merely requested a conference, and did not set forth the reasons for the late service of his Counterclaim-Dismissal Motion; thus, it would not have been possible to apply, to Plaintiff's letter, the standards of Rule 6(b)(1)(B) in any event.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court issue an Order: (1) pursuant to Rules 60(b)(1) and 60(b)(6) of the Federal Rules of Civil Procedure, and Rule 6.3 of the Local Civil Rules of the Eastern District of New York, granting reconsideration of this Court's Order, dated May 27, 2009; and (2) granting Plaintiff any other relief deemed just and proper by this Court.

Dated:  June 11, 2009

                                              Yours, etc.,

                                                 **s/ Todd C. Bank**
                                              TODD C. BANK
                                              119-40 Union Turnpike
                                              Fourth Floor
                                              Kew Gardens, New York 11415
                                              (718) 520-7125
                                              TB-6825

                                              Attorney for Plaintiff